Please the court. My name is Richard Long. I'm representing Knight Transportation. Please appeal. Okay, so you sort of see what... I feel like I've walked into someone else's party. But maybe you could kind of go into the complaint here and then the evidence that you've presented and why you think it's reasonable and plausible and meets the burden. Your Honor, I'm happy to do that. Because obviously all of these actually are a little bit different besides whatever we agree on as to the standards. Correct, Your Honor. But there's two ways of viewing what the district court did. One is the district court simply made a mistake. That is, it made this assumption. It said, gosh, we don't know if it's one day a week or five days a month or something like that. And we say, hey, even if it's one day a month, there's still over $10 million of liability just on the fixed costs there as well as the field costs, which is another $20 million. So that goes to $30 million. That's right. If you do that. But do you have an underlying assumption, I think, that each of your drivers works 50 weeks a year? No, Your Honor. That's right. The first part is just the mistake. The other part would be the standard. But going to the mistake, and I'm glad you asked that. What NYSE COO did, we're talking about independent contractor drivers, is it went through each month and counted up how many drivers do we have. It added those 12 months together, divided by 12 to say, on average in this year, we had 155 independent contractor positions. Why that's important is because there are fixed lease costs that attach to working. They're leasing to own. They have to make these lease payments. So it doesn't matter whether it's Joe Smith in January and John Smith in February. The only thing that matters is how many positions are there? How many independent contractors do we have working for us? Because then we can do the math and say they're going to be paying between $400 and $500 a week for lease payments, and we don't go to fuel. Let me ask you one question about that. There's a separate assertion as to how many drivers worked throughout, as you put it in your briefing, throughout these years, which is what I think the judge is suppressing, and then you have a certain number of contractor work weeks. Was that taken by actually looking at the work weeks separately from the number of contract drivers, or was that taken by assuming that each of those contract drivers worked a certain number of weeks per year? Do you understand my question? I'm not sure. Okay. So in your briefing to the district court, you talk about the number of independent contractor agreements you had in each of several years. Then you say that yields a total of a certain number of contractor work weeks, and what I'm trying to figure out is whether you had a separate calculation of the number of work weeks, which would account for the possibility that some of those drivers only worked for a month or four months. What we meant, and I'm sorry if it was unclear, is that, and again, as was done in the subliminal declaration to make it clear, just as I said, we went through month by month and counted how many do we have, because we were going with FTEs with positions. So when we say contractor work weeks, we took, well, on average in this year. So it may be Joe for four months and Sally for four months and Sam for four months. It doesn't matter. What matters is, on average, how many each month did you have? Because that's where you get your numbers. Someone's paying a lease. We don't care who, but someone's paying fixed lease costs. So the complaint, what in the complaint are you responding to? What is the complaint that you did wrong? The complaint alleges that Knight's contractor drivers were misclassified, that they are employees, and that these employees work regularly over 40 hours a week. Hence, there's an overtime claim. So if they're employees, then you wouldn't be entitled to any of these lease payments? Correct. I'm sorry. So and then that amount, and how would that affect the fuel? If it turns out that you have misclassified them and they are, in fact, employees. They would be reimbursed for their fuel. And the fuel is? Approximately $1,000 a week. And so that's the $10 million? $20 million, I think it was. But we calculated it two ways. One, when we first removed, we looked at what the average that the three plaintiffs were using. We thought, well, they're making the allegation. The three of them used this. This is good enough for us. It was about $1,100 a week. When they challenged us in the remand motion, we went back and said, well, we can do this better in the last quarter. And I paid $2.3 million or invoiced them for $2.3 million. We counted how many people, how many work weeks, that sort of thing. It came up to about $1,100 per work week. Or, sorry, $1,000 per work week. But then even putting that aside, if you just take the $2.3 million, it's invoicing them for $2.3 million in a three-month period. If you multiply that by 16, it's just for, you know, sometimes it was 155 positions, and sometimes 188. But if you're invoicing them for $2.3 million, which could be the subject of reimbursement in a three-month period, I think by the preponderance of the evidence, we've met the cap. Okay, so you assess your maximum exposure at $30 million? At least $30 million. Because we took our figures down. There was a mistake in calculating. Instead of a total of 700, I'm sorry, 517, it was actually 700. So it's more than that. But we wanted to be conservative all the way across. So what did the district court call you for? What did the district court call you for? And there's where I think there's two interpretations. One is the district court simply misunderstood. It thought that our figures were based on a single person working that whole year. But if it's not that, because plaintiffs have alleged, well, you know, you can't use averages, you have to know how many employees or alleged employees and how many weeks each of them worked to be able to make these calculations. We can't go with these averages. If the court is using that standard and saying that's why we need to know exactly who did what and when, then this is a legal certainty standard. And that's why on one side it could just be a mistake. On the other side, if in fact the court is saying, oh, you need much stronger evidence than what you presented, then we're talking about a legal certainty standard. So I don't want you to throw your, I don't even know if you're compadres with the other people, but would you say your case is stronger than the last factual case that we were discussing? I'll get you afterwards. They're still here. Yeah, I appreciate the question. Because when I first saw the three cases that were slated, of course, went out and read the briefs to see what is the issue. And in those cases what comes up, of course, is violation rate. We don't have a violation rate. No, because misclassification, at least speaking for myself, seems, and I'd like the opposing counsel to talk about this when it's his turn, seems fundamentally different because by definition his class is a class of people, all of whom he alleges have been misclassified. That's correct. And so they either are independent contractors or they're not independent contractors. There's kind of no in-between. Whereas if you say, well, sometimes I was denied my rest break, whatever that means, sometimes who knows what that means. And so it seems like fundamentally different to me. And the allegations are categorical. So your case is not quite as strong as where both sides stipulated. But it's stronger than the last case. Correct, yeah. Counsel, I've got a question for you. Could you please elaborate on, I thought I was very confused reading the district court as to how the district court addressed fuel costs. It seemed to me the district court did not really address your contention directly. That's correct, Your Honor. With the district court, I believe it was in a footnote, it was relying on just our removal papers and the plaintiff's opening brief, in which we based the fuel costs on an average of the three plaintiffs themselves. And when we went, or when we filed our opposition with the supplemental declaration, we made this even, we took $2.3 million for the last three months, to count out how many weeks, how many people, to get an average of about $1,000 per week in fuel costs. But then also, if you just take the $2.3 million, again, it's not connected to any particular person. We do have the hard fact that $2.3 million was invoiced to these independent contractors in a three-month period. And so just taking that in itself, we thought was also persuasive. Because the time period is a lot longer than three months. That's right, it's 16 months. I'm sorry, does that clarify it? Yes, but if that's the case, is the answer that we should summarily reverse the district court and say that a mountain controversy was shown, or should we vacate the decision and send it back, telling the district court it didn't really address your fuel cost contention, that you need to have some reasonable premise for your damages, but the court has not addressed that? Your Honor, we would say with the former, because just based on what the district court said, we were willing to stipulate that based on the court's findings, that it could be even one day a month that these people worked, although it contradicts the pleading, but let's say one day a week. That alone gives you 10.5. A week or a month, you said both. One day a month, I apologize. So we don't have to send it back to the court, because before this court right now, we have the evidence that here are the weekly costs. They're detailed. No one is really challenging those costs, and we have the methodology of how we came up with the position, number of positions working each month. So that alone is 10.5 million. We don't have to get to the fuel costs. We're already double. Great. Thank you. Thank you. Do you wish to save any time? Yes, I would. Thank you, Your Honor. Thank you. Good morning, Your Honors, and may it please the court, James Trush representing the plaintiffs, Patrick LaCrosse, and Mr. Laughlin. I'd like to first look at the broad brush and pick up maybe on some of the questions from the other cases where the court was concerned about the issue that pattern and practice does not mean 100% of the time. Yes, except that you have quite a different situation here, it seems to me, because as I understand your complaint, it is that the named plaintiffs have been misclassified and that they represent a class of persons who also all have been misclassified as exempt from various provisions of the labor code. So if that's true, then you have alleged that 100% of the members of the class have been misclassified. And so it seems to me that all the defense has to do is to say that there are some things that would have to be returned to these folks if they're not exempt, and the fuel cost being the most obvious. And if that's true, fuel costs alone are more than $5 million were done. What's wrong with that? I'll answer your question directly, Your Honor, but I do want to come back to the policy issue that I mentioned. Under California law, it's not necessary in a misclassification case that all employees were misclassified. That issue wasn't briefed by the parties here, but it is possible, and that's really the secondary point. But you alleged that in this case. That's my secondary point, is that I'm answering the court's question on that. In this case, the more important issues and why there's no evidence and why there's only speculation is because, number one, Labor Code 2802 does not say if an employer of independent contractors invoices purported independent contractors for fuel, then automatically those independent contractors can recover that as damages if they show their employees. The defendant here completely ignored the liability elements of Labor Code 2802. Labor Code 2802 in the briefing on remand indicates that there's two essential liability elements of Labor Code 2802. Number one, that the expenses are necessary expenditures. Number two, that they were incurred by an employee in direct consequence of the discharge of the duties. The only thing that they... But if you drive trucks, fuel seems pretty easy. These are independent contractors, Your Honor. Well, so, okay, so they don't have to... That's the question, isn't it? Maybe when they go into the rest stop, then they don't, you know, or they go run an errand, maybe they don't get that fuel cost. But if they're independent contractors and they're hauling and they're doing all this stuff, the fuel seems, like, really easy. There's no evidence, for example, Your Honor, the defendants allege these people were properly classified independent contractors. So, in theory, these drivers could have spent 10% of their time driving for a night in a given week and the other 90% of their time using their truck driving for somebody else. I don't know if that happens. Well, you didn't put any evidence regarding any of this, right? What we put on was a number of reasons that I've got a whole laundry list of them I'd like to go through of why there is absolutely no evidence here. It's entirely speculation and conjecture. So how do you get from 30 million down to 4,999,999 or whatever, based on your conjectures? Did you call them conjectures? I believe so. That doesn't sound reasonable and plausible to me. Well, um... We're not supposed to guess, so, but 30 million down to under 5 is a long way to go. Exactly. And we don't believe that the defendant has presented evidence of anything, of any damages, and here's why. They presented six paragraphs by their COO in a declaration on the original removal. Then when we remanded, they presented an 11-paragraph declaration. What is their business about counting? Counting paragraphs is not helpful. If these folks were misclassified as independent contractors, you have alleged, first of all, you've alleged a class of people who were all drivers, who were all misclassified. That's my first problem with your position as being distinct from any other cases. And you've said that they shouldn't have to pay their own business expenses, that those had to be reimbursed. That's one of the allegations. So why isn't it sufficient to say we had X number of bodies in this position during the relevant time period, and one of the things that they, we know they paid, was fuel costs that if they were employees, they shouldn't have to pay? It doesn't, however many paragraphs that it takes, why isn't that enough? There's three reasons why. First off, by just claiming in a declaration that a person worked in a position during that month does not establish if the person worked... It's a declaration under oath, right? Right, but it doesn't establish that they worked one day or every day that month. That's one reason. The second reason is because the defendant is using average fuel costs that the plaintiffs incurred. That's the basis for their underlying assumption. Remember, that's what they used, $1,100. Right, and so you would think that would be a strong assumption since you claimed it? There's no... We didn't allege that in the complaint, Your Honor. Any specific amount of fuel used... No, but if they've used what your clients experienced as a basis for proceeding, why is that bad? That ties into the earlier issue that I wanted to point out. That ties in to the well-settled principle in class actions that individual damages are acceptable, and that's one of the keys that I'd like to add to this conversation. You can have a pattern and practice alleged in a class action, and you can also have individualized damages, and that, I think, is really key here to the conversation, and I described that in the remand motion, which is at AE 97. Individualized damages cannot defeat class certification under Rule 23. I cited two nice... This isn't about class certification. It's about how much money is at stake in litigation as a whole, and to take your own clients as representative of the amount that might be at stake is quite different than saying it defeats class certification. It's not about certification. It's about how do we figure out, in the aggregate, how many dollars this entire litigation represents. That's a great question, Your Honor, and I argued that on the remand motion. What the defendant did here was they say the plaintiff's average fuel costs were $1,100-and-some-odd, and because the plaintiff alleges they were representative of the class, we can take that $1,100-and-some-odd figure, multiply it times 577, or 700 people, and voila, we've got this... That's not all they did, though. That's essentially it in one of the calculations. But as I understand it, there's also a calculation that shows that they actually invoiced a certain amount, having nothing to do with your clients necessarily. Correct, Your Honor. On the supplemental declaration in paragraph 9, the COO said we invoiced a little over $2.3 million in the first quarter of 2014. So that was their effort to buttress their... It was a new calculation they offered in the supplemental declaration, which is acceptable. Problems with that are several. Number one, there is no evidence whatsoever that the first quarter of 2014 is the same as any other time period in the class period. Number two, it completely ignores the liability factors, the liability elements of Labor Code Section 2802. Labor Code 2802 only allows an employee to recover necessary expenses that were incurred in direct consequence of performing their duties. Merely because Knight invoiced these drivers for a certain amount of fuel doesn't mean that fuel was necessary to the performance of their duties for Knight. Doesn't mean it was incurred in direct discharge of the performance of their duties for Knight. If you were doing anything but driving a truck, then I think that might be a better argument. But they only have to go by a preponderance, and fuel seems pretty integral to driving a truck. But they could have been driving for somebody else. There's no evidence of who they were driving for. None. Absolutely zero. There's none. There's no evidence to extrapolate the fuel cost bill in the first quarter of 2014 to any other time period, and there's no evidence that those. But let me ask you this. The declaration, I just went back to check this. The declaration relies on purchases that were made only with fuel cards issued by Knight, and so that doesn't explicitly state, but certainly suggests that it was business expenses for Knight. It's not just generic fuel costs. There's no evidence whatsoever that those fuel costs invoiced were actually fuel costs that were necessary to performing the job for Knight, that were incurred in direct consequence of performance of their duties for Knight, and those are the Labor Code 2802 liability elements. So there's no evidence. I'd like to point out a misrepresentation. We didn't have a reply briefing here in this case with the expedited nature of this proceeding. I'd like to point out one repeated what I believe is a misrepresentation of the record because it really was repeated, and I think it's permeated the understanding. The defendant claims at page... The defendant states at page 3, lines 4 and 5 from the bottom of the brief, that although plaintiffs alleged in their complaint that computer class members were employees who regularly worked more than 40 hours a week, the district court held that there is no substantive evidence to establish whether any of those class members worked one day a week, five days a week, seven days a week, etc. And they repeat this over and over and over in the brief. They repeat it at page 4, footnote 1, pages 8 and 9, page 10, page 11, page 14, page 27, and page 28. Plaintiffs don't allege in the complaint that they regularly worked more than 40 hours a week. It's not alleged in that manner. The closest allegation is paragraph 67, subsection C, and that alleges that they were a plaintiff whose computer class was required to work in excess of eight hours per day and or 40 hours a week. So it's a fine point, but it's an important one because the complaint doesn't allege that they regularly worked over 40 hours a week. And that is repeated in the defendant's brief. What difference does that make to the argument we've been discussing about field clubs, if any? Well, I think the defendants repeated it eight or ten times in their brief. I know, but what is the relevance of the fact that they said over 40 when they should have said over eight or over 40? They represent a picture of this workplace with the allegations of a situation where plaintiffs allege they regularly worked over 40 hours per week. So how is it possible that? I know, but none of that is relevant if we look only at the field club's question, correct? It's not directly relevant. I have the same concern in my mind as Judge Graper's raising. Now, if $2 million of fuel billed for one quarter, why isn't that sufficient to go exposure of more than $5 million? Well, Your Honor, because there is a complete lack of evidence on at least three critical points. Number one, there is no evidence that the amount of fuel billed in one quarter can be extrapolated to any other time period. There's no connection whatsoever. There's no evidence that other time periods during the class period There's a declaration that this is slower and less than the other time periods because it's the first quarter of the year. That's what the declaration says. Go to your other two points. That seems to be quite vague and not, I would submit, sufficient to meet the standard. My other points are that Labor Code 2802 has liability elements associated with it and really night invoicing these drivers for fuel does not mean that the fuel was a reasonable expense and it doesn't mean that it was incurred in the discharge of their duties tonight. And those are the liability elements of California Labor Code Section 2802. So those, I think, are essential liability elements where there's absolutely no effort at all to offer any evidence. What would Knight need to offer to establish those elements? Well, at a minimum, they should be offering business records to establish that these drivers were actually incurring these expenses and performing their duties per night. And I would submit there would have to be some kind of evidence as well demonstrating that this amount of fuel that was charged to them for this quarter is somehow able to be extrapolated to other time periods within the class period. So I think those are two elements that are completely lacking of any evidence. Thank you, Your Honor. Thank you, Counsel. Mr. Romney, you have a little bit of time left. Just briefly, Your Honor, and if you have any questions, please ask. But as to what Mr. Crutch is saying is that essentially we do have to prove the case against us. It's even past legal certainty. Well, I think he's saying we need to give them some discovery. Well, that as well. But to the extent that we're using $2.3 million in invoicing our drivers, no one is contending that they're working for other people. You have the three plaintiffs. They weren't working for anyone else. They were only working per night. And furthermore, with lease-to-own, you would expect that normally they would be working per night. There's no evidence whatsoever that these drivers have been working for other companies. The evidence has to be a preponderance in your favor. You have the burden by a preponderance. Nevertheless, between the lease-to-own and the fact that they were night credit cards, I think that is a permissible inference from this evidence. In my view, I'm only speaking for myself, but it remains all the time your burden to demonstrate by a preponderance of the evidence. I agree, Your Honor. It's our burden to prove by a preponderance of the evidence that it was over $2 million. Right. And so as to the very, very small details of trying to anticipate, well, someone could come back and say, perhaps, you know, this mile was not. Well, even ultimately, though it's your burden, the other side can attack what you put in to show that it doesn't meet the burden. Because technically, over the $5 million, you say, okay, we met our burden. But they could attack that so that it would get it down to, say, $3 million or something. Certainly. And the court could find that to be. Going back to Ray versus Michael, when you've alleged something, when you've shown the evidence, and the other side comes back and says nothing. I mean, after all, any of the three plaintiffs could have had a declaration which said, you know, we only purchased one day a week, or we never spent that. They could have done this, but they didn't. We did. Thank you, counsel. Thank you very much, Your Honor. A case just argued is submitted, and we have been very lucky today to have such excellent help from all the lawyers on all the cases. So that one is our last one on the morning docket, and we will be adjourned.
judges: Graber, Gould, Callahan